## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| **DANIEL KURZAWSKI** | ) | |
| *Plaintiff,* | ) ) ) | **Civil Action File No.** |
| v. | ) ) ) | |
| **ARCONIC CORPORATION** | ) ) ) | **JURY TRIAL DEMANDED** |
| *Defendant.* | ) ) ) | |

## COMPLAINT

Daniel Kurzawski ("Plaintiff") files this Complaint against Defendant Arconic Corporation ("Arconic" or "Defendant"). Plaintiff respectfully shows this Court as follows:

### INTRODUCTION

1. This action is for gender discrimination and retaliation arising under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. §2000e, *et seq*. ("Title VII"). Plaintiff seeks declaratory and injunctive relief, back pay, front pay, compensatory damages, punitive damages, liquidated damages, and attorney's fees and costs.

1

## JURISDICTION AND VENUE

2. Plaintiff's Title VII claims present federal questions over which the Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. §2000e-5(f)(3).

3. Venue is appropriate in this Court as upon information and belief the events complained of herein occurred within the geographic boundaries of the U.S. District Court for the Northern District of Georgia and upon information and belief all parties to this action reside within the geographic boundaries of the United States District Court for the Northern District of Georgia. Venue is proper pursuant to 28 U.S.C. § 1391 (b) and (c).

## PARTIES

4. Plaintiff is a resident of the State of Georgia.

5. Defendant is a for-profit company registered to conduct business in the state of Georgia.

6. Defendant transacts business in the Northern District of Georgia.

7. Defendant is subject to this Court's jurisdiction. Defendant may be served through its registered agent if service of process is not waived:

> Registered Agent Name: **C T CORPORATION SYSTEM**
> Physical Address: **289 S CULVER ST, LAWRENCEVILLE, GA, 30046-4805, USA**
> County: **Gwinnett**

## ADMINISTRATIVE PROCEEDINGS

8. On August 9, 2023, Plaintiff filed a timely charge of gender discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC").

9. On March 26, 2024, Plaintiff received a notice of right to sue from the EEOC.

10. Plaintiff has exhausted his administrative remedies prerequisite to the filing of this suit pursuant to Title VII.

11. This lawsuit has been filed within 90 days of Plaintiff's receipt of his notice of right to sue.

## STATEMENT OF FACTS

12. Defendant is a provider of aluminum and architectural products that advance the automotive, aerospace, commercial transportation, industrial, packaging, and building and construction markets.

13. During all time relevant to this lawsuit, Defendant employed more than fifteen (15) employees for each working day during each of twenty (20) or more calendar weeks during Plaintiff's employment.

14. Defendant is subject to the anti-discrimination and anti-retaliation provisions of Title VII.

15. Plaintiff is a male.

16. Plaintiff was an employee of Defendant at all times material to this Complaint.

17. Plaintiff began employment with Defendant on or about January 17, 2023.

18. Plaintiff was hired as Category Manager.

19. Plaintiff was responsible for all direct material spend within his assigned categories, including the management of critical supplier relationships in conjunction with the procurement team.

20. Plaintiff was also responsible for carrying out the overall goal of achieving the best total cost position for all external spend within his assigned categories, the lowest sourcing risks, and best supplier performances to ensure the highest efficiency and effectiveness of the procurement team.

21. Finally, Plaintiff was responsible for serving as the point of contact for supplier issues within his assigned categories.

22. Plaintiff reported to Sandi Shunkwiler ("Ms. Shunkwiler"), a Senior Procurement Manager, who in turn reported to Tendani Mitole ("Mr. Mitole"), the Global Procurement Director.

23. Plaintiff soon learned that Ms. Shunkwiler both treated her male employees with disdain and often made demeaning comments towards Plaintiff and other males in his workgroup (hostile work environment), and treated men materially different than women with regard to her management style (disparate treatment).

24. For example, Ms. Shunkwiler would often say, "I need more women on the team," "You guys better behave," "I know how you guys are," and "Ugh…boys."

25. Further, Plaintiff felt that he was being held to a different standard than Ms. Shunkwiler's female employees, who seemed to have more flexibility in the hours they were required to be in the office, their ability to work from home, and their work product standards.

26. For example while on a trip, Plaintiff noticed that he was required to be in the office five days a week while similarly situated females were not.

27. On or about May 8, 2023, Plaintiff had meetings scheduled in Pittsburgh with Mr. Mitole.

28. Plaintiff missed his original flight due a traffic accident that delayed his arrival to the airport.

29. Plaintiff immediately rebooked another flight for the same day, which was initially delayed at the gate and then canceled due to a sick crew member.

30. Plaintiff suffers from flight anxiety and was very stressed by these circumstances.

31. In addition, Plaintiff had been prescribed anxiety medication for flight anxiety that can make Plaintiff very tired.

32. After his second flight was canceled, Plaintiff returned home and fell asleep due to his medication.

33. Plaintiff woke up at approximately 3:00 PM and immediately sent a text to Ms. Shunkwiler explaining what happened.

34. Ms. Shunkwiler berated Plaintiff and humiliated him for falling asleep, saying, "LOL, such a needy guy," and other similar sexist comments and then following that up with the statement, "Well, that shut you up."

35. On May 9, 2023, after the previous day's events, Plaintiff sent an email to Mr. Mitole and Ms. Shunkwiler stating that he was not traveling to Pittsburgh that day but instead staying in Atlanta to "further work on the supply/demand/lead time confirmation task [Ms. Shunkwiler] assigned with priority over travel."

36. Plaintiff felt that his decision to not travel was justified and appropriate due to Ms. Shunkwiler stating on Friday, May 5, that the data she'd requested was more important than travel.

37. In the same email, Plaintiff formally made a complaint of gender discrimination when he requested a discussion regarding the communication and professional relationship between himself and Ms. Shunkwiler due to what Plaintiff felt was bullying, "micromanagement, constant critiquing, flippant and uncalled for comments, and demeaning comments."

38. Specifically, Plaintiff mentioned that "you boys" comments were unprofessional.

39. Plaintiff also stated that Ms. Shunkwiler's behavior after he missed his flight, where she humiliated him and called him a "needy guy" was uncalled for and demeaning.

40. Plaintiff stated that while he hoped he and Ms. Shunkwiler could come to a resolution, he copied Mr. Mitole because he wanted him to be aware of the problem due to his relatively short employment at that point.

41. Subsequently, Plaintiff, Mr. Mitole, and Ms. Shunkwiler had a phone call to discuss Plaintiff's complaint of gender discrimination.

42. During that meeting, Ms. Shunkwiler agreed to stop making demeaning comments and that there would be a 30-day review of the situation.

43. Ms. Shunkwiler also added Mr. Mitole to their 1:1 meeting.

44. Plaintiff told Ms. Shunkwiler that he did not want to encroach on Mr. Mitole's time and while he did not have any issue with Mr. Mitole's inclusion, he did not think it was necessary.

45. Importantly, Plaintiff never declined to have Mr. Mitole participate.

46. After 30 days, Mr. Mitole sent an email to follow-up with Plaintiff as agreed.

47. At that point, Plaintiff felt that the gender-based harassment had calmed down, and he told Mr. Mitole that the problems were no longer present.

48. However, after that email, Plaintiff began to feel retaliated against.

49. Plaintiff felt the retaliation began with an analysis he did about thermal brakes.

50. Plaintiff was told to present fiscal information that was knowingly factually incorrect.

51. Plaintiff expressed concerns about the accuracy of the data and his fiduciary responsibility.

52. In response to those concerns, Plaintiff was threatened with HR and disciplinary actions.

53. Plaintiff sent the analysis as requested.

54. The same day, Plaintiff received an email with a formal warning from Ms. Shunkwiler, which contained mischaracterizations and misrepresentations and had no basis in fact.

55. In early July 2023, Ms. Shunkwiler scheduled 6-month review meetings with her team members.

56. Plaintiff's review meeting was originally scheduled for July 5th but was then rescheduled for July 10th.

57. On July 10th, the meeting was rescheduled for the morning of July 12th and then moved to the afternoon of July 12th.

58. Before the meeting on July 12th, it was rescheduled for the afternoon of July 13th.

59. On July 13th, the meeting was rescheduled for the afternoon of July 14th.

60. This last-minute rescheduling caused a problem for Plaintiff as he needed to drive to Florida on July 14th to obtain a medical prescription, and he needed to leave the office at or before 3:30, the time of the rescheduled meeting to get the prescription filled.

61. Plaintiff immediately informed Ms. Shunkwiler that he could not make that time due to his need to leave the office at 3:30 to obtain certain prescription medication he needed regarding a chronic disability he suffered from.

62. The morning of July 14th, Mr. Mitole sent Plaintiff an identical invite for 3:30 that afternoon.

63. Plaintiff again stated that he needed to leave the office at 3:30 and declined the invite, asking for it to be rescheduled.

64. Neither Mr. Mitole nor Ms. Shunkwiler ever mentioned that Plaintiff could call into the meeting from his car.

65. Plaintiff further explained that based on what he had been told in orientation and what was written in the employee handbook, he understood that their "core" work hours were between 9:00 AM and 3:00 PM, and that outside of those times, he did not need management approval to leave the office. Neither Ms. Shunkwiler nor Mr. Mitole disputed this rule or stated that the rule was being changed, nor did they inform the Plaintiff that he would be terminated if he didn't make the appointment.

66. Plaintiff left the office on July 14th at 3:30 for his previous engagement.

67. Immediately after Plaintiff left, Ms. Shunkwiler called him and stated that he needed to go to HR as soon as he arrived the morning of Monday, July 17th.

68. Plaintiff reported to HR that Monday morning and was told he was terminated immediately for insubordination.

69. Plaintiff believes his termination was pretextual and in reality, he was terminated in retaliation for making complaints of gender discrimination.

## COUNT I

### Discrimination on the basis of Gender in Violation of Title VII

70. Plaintiff incorporates by reference the preceding Paragraphs as if fully restated herein.

71. As detailed above, throughout his employment with Defendant, Plaintiff was subjected to discrimination, harassment, and a hostile work environment by Ms. Shunkwiler and other employees simply because of his gender.

72. All the above conduct was unwelcome and offensive to Plaintiff as well as open and obvious in the workplace.

73. Plaintiff complained that the conduct was unwelcome, offensive, and created a hostile work environment.

74. Defendant willfully and wantonly disregarded Plaintiff's rights. Additionally, Defendant's discrimination and retaliation against Plaintiff was undertaken in bad faith and constitutes unlawful, intentional gender discrimination in violation of Title VII.

75. As a result of Defendant's unlawful actions, Plaintiff has suffered emotional distress, inconvenience, loss of income and benefits (past and future), humiliation, and other indignities. Plaintiff seeks all damages available.

76. Plaintiff seeks all remedies available by law or equity.

## COUNT II
## Retaliation in Violation of Title VII

77. Plaintiff incorporates by reference the preceding paragraphs as if fully restated herein.

78. Plaintiff engaged in protected activities protected under Title VII by making complaints of discrimination on the basis of gender.

79. As a result of her complaints of harassment, Plaintiff suffered adverse employment actions including being forced to present inaccurate data and not being allowed to decline a meeting that was scheduled after core working hours.

80. As a direct and proximate result of Defendant's unlawful discriminatory and retaliatory actions, Plaintiff has suffered lost wages and other benefits of employment, significantly diminished employment opportunities, inconvenience, loss of income, and emotional distress, including but not limited to outrage, shock, and humiliation because he exercised his rights under Title VII.

81. Defendant willfully and wantonly disregarded Plaintiff's rights, and Defendant's discrimination and retaliation against Plaintiff was undertaken in bad faith.

82. As a result, Plaintiff is entitled to both equitable and monetary relief in all forms provided by law.

83. Plaintiff seeks all remedies available to him by law or equity.

**WHEREFORE**, Plaintiff demands an arbitration and the following relief:

(a) cause process to issue;

(b) issue a declaratory judgment that Defendant's acts, policies, practices, and procedures complained of herein violated Plaintiff's rights under Title VII and state law;

(c) grant Plaintiff a permanent injunction enjoining Defendant, their officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy which discriminates against the Plaintiff and others similarly situated because of the exercise of their rights under Title VII or because of their participation in this lawsuit;

(d) grant Plaintiff judgment in her favor and against each Defendant under all Counts of this Complaint;

(e) order Defendant to make the Plaintiff whole by providing for his out-of-pocket losses as well as back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendant's unlawful and discriminatory acts, together with interest thereon, all in an amount to be proven at trial;

(f) grant to Plaintiff compensatory and punitive damages for Defendant's willful violations of Title VII;

(g) grant to Plaintiff reasonable attorney's fees together with any and all other costs associated with this action as provided by Title VII and state law violations; and

(h) grant Plaintiff all other damages including nominal damages, available by law.

(i) grant such additional relief as this court deems proper and just.

Respectfully submitted on this 24th day of June, 2024.

/s/ J. Stephen Mixon
J. Stephen Mixon
Georgia Bar No. 514050
Attorney for Plaintiff

THE MIXON LAW FIRM
3344 Peachtree Street, Suite 800
Atlanta, Georgia 30326
Phone: 770-955-0100
steve@mixon-law.com